**ROBERTSON, FREILICH, BRUNO & COHEN LLC**
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
(973) 848-2100
Irvin M. Freilich, Esq.
Gary N. Donner, Esq.
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN STANDARD INC.; BASF CORPORATION; BRISTOL-MYERS SQUIBB COMPANY; COLUMBIAN CHEMICALS COMPANY; GENERAL MOTORS CORPORATION; GLENN SPRINGS HOLDINGS INC.; SHELL OIL COMPANY; SMURFIT - STONE CONTAINER ENTERPRISES, INC. f/k/a JEFFERSON SMURFIT CORPORATION (U.S.) f/k/a CONTAINER CORPORATION OF AMERICA; and TEXTRON, INC., <br><br>          Plaintiffs, <br><br>v. <br><br>DONALD W. JONES, SR.; JONES INDUSTRIAL SERVICE COMPANY; JONES INDUSTRIAL SERVICE CORPORATION; SWISHER INTERNATIONAL, INC. f/k/a HELME TOBACCO CO.; PHARMACEUTICAL PRODUCT DEVELOPMENT INC. f/k/a APPLIED BIOSCIENCE INTERNATIONAL, INC.; JOHN DOES 1-20; and RICHARD ROES 1-10, <br><br>          Defendants. | Civil Action No.: <br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT AND JURY DEMAND** |

  Plaintiffs American Standard Inc., a Delaware corporation having a principal place of business at 1 Centennial Avenue, Piscataway, New Jersey; BASF Corporation, a Delaware

{00012748.DOC;2}

corporation having a principal place of business at 100 Campus Drive, Florham Park, New Jersey; Bristol-Myers Squibb Company, a New York corporation having a principal place of business at 345 Park Avenue, New York, New York; Columbian Chemicals Company, a Delaware corporation having a principal place of business at 1800 West Oak Commons Court, Marietta, Georgia; General Motors Corporation, a Delaware corporation, having a principal place of business at 300 Renaissance Center, Detroit, Michigan; Glenn Springs Holdings Inc., a Delaware corporation having a principal place of business at 2480 Fortune Drive, Lexington, Kentucky; Shell Oil Company, a Delaware corporation having a principal place of business at 910 Louisiana Street, Houston, Texas; Smurfit - Stone Container Enterprises, Inc., a successor by merger to Jefferson Smurfit Corporation (U.S.), f/k/a Container Corporation of America, a Delaware corporation having a principal place of business at 150 North Michigan Avenue, Chicago, Illinois; and Textron Inc., a Delaware corporation having a principal place of business at 40 Westminster Street, Providence, Rhode Island (hereinafter collectively referred to as "Plaintiffs"), by way of complaint against the Defendants, allege as follows:

## STATEMENT OF THE CASE

1. This is a civil action for recovery of costs and declaratory relief under Sections 107 and 113(f)(3)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9607, 9613(f)(3)(B), as amended by the Superfund Amendment and Reauthorization Act of 1986 ("CERCLA"); under Section 11f(a)(2) of the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J. Stat. § 58:10-23.11f(a)(2); and under the common law of the State of New Jersey.

2. Plaintiffs seek to recover certain response costs incurred or to be incurred, including natural resource damages ("NRD") by the Plaintiffs in responding to the releases or threatened

releases of hazardous substances at or from the Jones Industrial Services Landfill Site in South Brunswick, Middlesex County, New Jersey (hereinafter "the JIS Site" or "the Site"). Plaintiffs also seek a declaratory judgment holding Defendants jointly and severally liable for, or in the alternative liable for their proportionate shares of, certain other costs which have been incurred or will be incurred in investigating and responding to such releases or threatened releases of hazardous substances at or from the Site, including NRD.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. §§ 9607 and 9613(b) and 28 U.S.C. § 1331.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 9613(b), because the claims arose in this district, the releases or threatened releases of hazardous substances occurred in this district, and the defendants reside and/or have done business in this district.

## DEFENDANTS

5. Each of the Defendants is a person within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), and Section 11b of the Spill Act, N.J. Stat. § 58:10-23.11b.

### *Liability as an Owner/Operator – 42 U.S.C. § 9607(a)(1) – (2)*

6. Defendant, Jones Industrial Service Company, (hereinafter "J.I.S. Co.") is a New Jersey corporation with a principal place of business located at 999 Cranbury Rd., Jamesburg, New Jersey 08831. Defendant, Jones Industrial Service Corporation, (hereinafter "J.I.S. Corp.") is a New Jersey corporation with a principal place of business located at 999 Cranbury Rd., Jamesburg, New Jersey 08831. Defendant Donald W. Jones, Sr. is a person with an address at

1156 Huron Road North Brunswick, New Jersey (hereinafter collectively referred to as "the Jones Defendants").

7. Defendants Richard Roes 1-10 are persons having an unknown address and identity.

8. Upon information and belief, the Jones Defendants and Richard Roes 1-10 qualify as a person who currently owns a "facility" as defined in 42 U.S.C. §§ 9601(9), (20) or owned or operated a facility during the time period in which hazardous substances, as defined under 42 U.S.C. § 9601(14), were disposed of at the facility.

*Liability as a Transporter – 42 U.S.C. 9607(a)(4)*

9. Defendant, J.I.S. Corp. is a New Jersey corporation with a principal place of business located at 999 Cranbury Rd., Jamesburg, New Jersey 08831. Defendant Donald W. Jones, Sr. is a person with an address at 1156 Huron Road North Brunswick, New Jersey. Upon information and belief, Defendants J.I.S. Corp. and Jones qualify as persons who accepted hazardous substances, as defined under 42 U.S.C. § 9601(14), for transport to and/or disposed of at a "facility" as defined in 42 U.S.C. § 9601(14).

*Liability as an Arranger – 42 U.S.C. § 9607(a)(3)*

10. Defendant J.I.S. Co. is a New Jersey company with a principal place of business at 999 Cranbury Rd., Jamesburg, New Jersey 08831. Defendant Donald W. Jones, Sr. is a person with an address at 1156 Huron Road North Brunswick, New Jersey.

11. Defendant Swisher International, Inc., f/k/a Helme Tobacco Company, ("Swisher f/k/a Helme Tobacco") is a Connecticut corporation with a principal place of business located at 20 Thorndal Circle, Darien, Connecticut. Upon information and belief, Helme Tobacco Company owned and operated a facility in Helmetta, New Jersey, which utilized chemical-based products and wastes, including hazardous substances. Upon information and belief, Helme Tobacco

{00012748.DOC;2}                    4

closed its Helmetta plant in 1992. Upon information and belief, Helme Tobacco was acquired by Swisher in 1993. Upon information and belief, Swisher is the successor in interest to Helme Tobacco.

12. Defendant Pharmaceutical Product Development, Inc., ("PPD") f/k/a Applied Bioscience International, Inc. ("PPD f/k/a Applied Bioscience") is a Texas corporation with a principal place of business at 3151 S. 17th Street, Wilmington, North Carolina. Upon information and belief, Applied Bioscience International, Inc., has been a wholly-owned subsidiary of PPD since 1996. Upon information and belief, Applied Bioscience International, Inc. acquired Bio/Dynamics in 1986. Upon information and belief, Bio/Dynamics owned and operated a research facility from 1961 to at least 1989 in East Millstone, New Jersey, which generated hazardous substances. Upon information and belief Applied Bioscience International is the successor in interest to Bio/Dynamics. Upon information and belief, PPD is the successor in interest to Applied Bioscience International, Inc.

13. Defendants John Does 1-20 are persons having an unknown address and identity.

14. Defendants J.I.S. Co., Jones, Swisher f/k/a Helme Tobacco, PPD f/k/a Applied Bioscience International and John Does 1-20 qualify as persons who by contract, agreement or otherwise arranged for disposal or treatment of hazardous substances, as defined under 42 U.S.C. § 9601(14), or arranged with a transporter for transport for disposal or treatment of hazardous substances, which were transported to and/or disposed at a "facility" as defined in 42 U.S.C. § 9601(9).

*Spill Act Liability – N.J. Stat. § 58:10-23.11g(c)(1).*

15. Defendants J.I.S. Co., J.I.S. Corp., Jones, Swisher f/k/a Helme Tobacco, PPD f/k/a Applied Bioscience International, John Does 1-20 and Richard Roes 1-10 are persons who have

{00012748.DOC;2}  5

discharged a hazardous substance and/or are in any way responsible for the disposal or discharge of hazardous substances at the Site, as defined under N.J. Stat. § 58:10-23.11b.

## THE SITE

16. The JIS Site is located within the Township of South Brunswick, New Jersey, on Cranbury South River Rd., Block 17.010, Lots 9.05 and 9.06 on the tax maps of the Township of South Brunswick.

17. The JIS Site encompasses approximately twenty-four (24) acres and is bounded generally by Cranbury South River Road (Rt. 535) on the east, a horticultural nursery to the south, the New Jersey Turnpike on the west, and an agricultural field to the north.

18. From 1955 through December 1980, the J.I.S. Co. operated a landfill on a portion of the Site.

19. During the period 1955 – 1980, Jones and J.I.S. Co. directed and allowed the disposal of wastes at the JIS Site. Such wastes contained hazardous substances including, but not limited to, pesticides, petroleum hydrocarbons, volatile organic substances and other toxic chemicals and wastes.

20. During the period 1955 – 1980, J.I.S. Corp. transported and disposed of wastes including hazardous substances at the J.I.S. Site.

21. During the period 1955 – 1980, the Jones Defendants, Swisher f/k/a Helme Tobacco, PPD f/k/a Applied Bioscience International, and John Does 1-20 arranged for the disposal of wastes including hazardous substances at the J.I.S. Site.

22. The New Jersey Department of Environmental Protection (hereinafter "NJDEP") has alleged that substances were commingled, spilled and released into the environment at the JIS

Site. These wastes contained substances that were hazardous within the meaning of 40 C.F.R. § 302.4.

23. Hazardous substances within the meaning of 40 C.F.R.§ 302.4 were released from the JIS Site.

24. In December 1975, NJDEP ordered J.I.S. Co. to cease operations of the landfill at the Site. In January 1976, NJDEP brought suit in the Superior Court of New Jersey seeking closure of the landfill at the Site. In August 1976, the Court prohibited the disposal of certain additional substances at the Site but allowed the landfill at the Site to continue to accept certain other specified wastes. Upon information and belief, disposal activities continued at the landfill until 1980.

25. On September 1, 1983, the Site was placed on the National Priorities List (hereinafter "NPL") promulgated by the United States Environmental Protection Agency (hereinafter "EPA") pursuant to CERCLA § 105, 42 U.S.C. § 9605 and codified at 40 C.F.R. part 300, app B. (2000).

26. In June 1984, the Site's landfill registration was revoked by the NJDEP and, in December 1985, the Appellate Division of the Superior Court of New Jersey issued an Order closing the landfill.

27. Upon information and belief, on May 20, 1986, the NJDEP served a Directive upon Donald W. Jones, Sr., J.I.S. Co. and J.I.S. Corp. The Directive stated that "J.I.S.[Co.], J.I.S. Corp. and Donald W. Jones, individually, are responsible for the discharge of hazardous substances at the J.I.S. Landfill." It further directed J.I.S. Co. "to arrange for the conducting of the RI/FS [Remedial Investigation and Feasibility Study] of the J.I.S. Landfill."

28. Upon information and belief, on or between December 18, 1989 and January 6, 1997, NJDEP issued a series of Directives "in order to notify the [directive recipients, including

{00012748.DOC;2}  7

Swisher f/k/a Helme Tobacco and PPD f/k/a Applied Bioscience International] that the Department, pursuant to the provisions of the Spill Act, has determined that it is necessary to remove or arrange for the removal of certain hazardous substances and to notify such Respondents that the Department believes them to be responsible for discharges of hazardous substances at the J.I.S. Landfill."

29. On August 15, 1995, EPA issued a Record of Decision ("ROD") for the following remedial actions to be performed at the JIS Site: provision of an alternative water supply for residents with contaminated drinking water wells; upgrading of the existing landfill cap; extraction of contaminated ground water from the primary plume underlying the Site; treatment of the contaminated ground water on the Site by a recharge trench; and implementation of a ground water monitoring program to monitor primary and secondary plumes and to ensure the effectiveness and protectiveness of the remedy.

30. On June 30, 1997, Plaintiffs executed an Administrative Consent Order with the NJDEP ("1997 ACO") to perform the remedial actions identified in the ROD, and any additional remedial investigation and/or remedial action determined by NJDEP to be necessary at the Site. J.I.S. Co., J.I.S. Corp., and Jones were included in the caption of the 1997 ACO, but they were not signatories of the ACO.

31. In October 2004, Plaintiffs, but not any of the Defendants, executed a second ACO ("2004 ACO") with NJDEP under which the Plaintiffs agreed to perform a remedial investigation of the secondary ground water plume and to install and operate a Biosparge Pilot Study at the Site.

# CLAIMS FOR RELIEF

## COUNT I

### *Cost Recovery and/or Contribution Under CERCLA*

32. The allegations in paragraphs 1 through 31 of this Complaint are hereby repeated and realleged as if fully set forth herein at length.

33. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> (1) the owner and operator of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other part or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –
>
> > (A) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
> >
> > (B) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.

34. Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f), provides in pertinent part:

> A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement referred to in [113(f)(2)].

35. Upon information and belief, Defendants Jones, J.I.S. Co. J.I.S. Corp. and Richard Roes 1-10 are liable, under Sections 107(a)(1)-(2) of CERCLA, 42 U.S.C. §§ 9607(a)(1)-(2), as persons who currently own a "facility" as defined in 42 U.S.C. § 9601(9), or who owned or

operated a facility during the time period in which hazardous substances, as defined under 42 U.S.C. § 9601(14), were transported to and/or disposed of at the facility.

36. Upon information and belief, Defendants Jones and J.I.S. Corp. are liable under Section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4), as persons who accepted hazardous substances for transport to a disposal or treatment facility, specifically the J.I.S. Site. Upon information and belief, hazardous substances of the types transported by these defendants to the J.I.S. Site have been found at and in the vicinity of the Site.

37. Upon information and belief, Defendants J.I.S. Co., Jones, Swisher f/k/a Helme Tobacco, PPD f/k/a Applied Bioscience International, and John Does 1-20, are liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as persons who by contract, agreement or otherwise arranged for disposal or treatment of hazardous substances, as defined under 42 U.S.C. § 9601(14), or arranged with a transporter for transport for disposal or treatment, of hazardous substances, to a "facility" as defined in 42 U.S.C. § 9601(9).

38. The releases or threatened releases of hazardous substances from the Site have caused Plaintiffs to incur "response" costs, as defined in 42 U.S.C. § 9601(25) which have not been reimbursed. Plaintiffs will continue to incur additional response costs for Site remediation activities, including "remedial action" costs, as defined in 42 U.S.C. § 9601(24), and/or "removal" costs, as defined in 42 U.S.C. § 9601(23), as well as NRD.

39. The costs incurred by the Plaintiffs are consistent with the National Contingency Plan, as set forth in 40 C.F.R., Part 300 (2000).

40. Plaintiffs are performing parties under two administratively approved consent orders – the 1997 ACO and 2004 ACO. These Consent Orders resolved some or all of Plaintiffs' liability with the United States, the State of New Jersey and/or NJDEP for "some or all of a response

action or for some or all of the costs of such action." None of the Defendants is a party to these ACOs.

41. Upon information and belief, none of the Defendants is a party to a prior settlement with the United States or the State of New Jersey and/or NJDEP in connection with the Site.

42. Each Defendant is liable jointly and severally to Plaintiffs, or in the alternative liable for their proportionate share, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a) and Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), for all response costs, plus interest, incurred or to be incurred, including NRD, by the Plaintiffs in connection with the Site.

## COUNT II

### *Cost Recovery and/or Contribution under New Jersey Spill Compensation and Control Act*

43. The allegations in paragraphs 1 through 42 of this Complaint are hereby repeated and realleged as if fully set forth herein at length.

44. Section 11f(a)(2) of the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J.S.A. § 58:10-23.11f(a)(2) provides:

> Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and person shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance. In an action for contribution, the contribution plaintiffs need prove only that a discharge occurred for which the contribution defendant or defendants are liable pursuant to the provisions of [N.J. Stat. § 58:10-23.11g]

45. Upon Information and belief, Defendants J.I.S. Co., J.I.S. Corp., Jones, Swisher f/k/a Helme Tobacco, PPD f/k/a Applied Bioscience International, Richard Roes 1-10 and John Does 1-20, are liable under Section 11g of the Spill Act, N.J. Stat. § 58:10-23.11g, as persons who have discharged a hazardous substance, or are in any way responsible for the discharge of a hazardous substance.

46. Upon information and belief, the Jones Defendants and Richard Roes 1-10 owned and/or operated the Site during the time period in which hazardous substances were transported to and/or disposed of at the Site.

47. The releases or threatened releases of hazardous substances from the Site have caused Plaintiffs to incur "response" costs, as defined in N.J.S.A. § 58:10-23.11b which have not been reimbursed. Plaintiffs will continue to incur additional response costs for Site remediation activities, including "remedial action" costs, as defined in N.J.S.A. § 58:10-23.11b, and/or "removal" costs, as defined in N.J.S.A. § 58:10-23.11b, as well as NRD.

48. Each Defendant is liable jointly and severally to Plaintiffs, or in the alternative liable for each one's proportionate share, pursuant to the provisions of the Spill Act, for all response costs, plus interest, incurred or to be incurred (including NRD) by the Plaintiffs in connection with the Site.

## COUNT III

### *Claim For Declaratory Judgment Under CERCLA*

49. The allegations in paragraphs 1 through 48 of this Complaint are hereby repeated and realleged as if fully set forth herein at length.

50. There is a present and actual controversy between Plaintiffs and Defendants concerning Defendants' obligation to reimburse Plaintiffs for response costs which they have incurred and which they will incur, including NRD, at the JIS Site.

51. Plaintiffs seek a declaratory judgment, under Sections 107(a) and 113(f)(3)(B) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(f)(3)(B), and 28 U.S.C. §§2201 and 2202, against Defendants, holding that the Defendants are liable jointly and severally to Plaintiffs, or in the alternative liable for each one's proportionate share, for response costs that Plaintiffs have incurred and will incur in the future, including NRD.

{00012748.DOC;2}                                        12

## COUNT IV

### *Claim For Declaratory Judgment Under the Spill Act*

52. The allegations in paragraphs 1 through 51 of this Complaint are hereby repeated and realleged as if fully set forth herein at length.

53. Plaintiffs seek a declaratory judgment, under the Spill Act, N.J.S.A. § 58:10-23.11b, against Defendants, holding that the Defendants are liable jointly and severally to Plaintiffs, or in the alternative liable for each one's proportionate share, for response costs that Plaintiffs have incurred and will incur in the future, including NRD.

## COUNT V

### *Contribution Claim For Relief Under New Jersey Common Law*

54. The allegations in paragraphs 1 through 53 of this Complaint are hereby repeated and realleged as if fully set forth herein at length.

55. Upon information and belief, by virtue of each Defendant's status and/or conduct as alleged herein above, each Defendant is a tortfeasor. The Plaintiffs have agreed to perform certain remedial activities at the JIS Site, and have incurred costs and will continue to incur costs, including NRD, in performing those remedial activities. In performing those activities, Plaintiffs have paid and will pay more than their fair share of the remedial and response costs, and NRD, in this action.

56. By virtue of the above, Plaintiffs are entitled to contribution from the Defendants pursuant to New Jersey common law.

## COUNT VI

### *Contribution Claim Based Upon Public Nuisance*

57. The allegations in paragraphs 1 through 56 of this Complaint are hereby repeated and realleged as if fully set forth herein at length.

58. Upon information and belief, the release of hazardous substances from the JIS Site has created a public nuisance that caused the citizens of the State of New Jersey to suffer "special and particular damages" and "irreparable injury."

59. The Plaintiffs have agreed to perform certain remedial activities and have incurred costs, and will continue to incur costs, including NRD, in performing those remedial activities. In doing so, Plaintiffs have paid and will pay more than their fair share of the claims that the State of New Jersey has asserted or could have made in this action. The conduct of the Defendants caused, in whole or in part, the injuries the State has alleged, and the Defendants are liable to Plaintiffs for contribution of the share of such damages representing the Defendants' comparative fault, in an amount to be proved at trial.

## COUNT VII

### *Claim for Unjust Enrichment - Restitution*

60. The allegations in paragraphs 1 through 59 of this Complaint are hereby repeated and realleged as if fully set forth herein at length.

61. By virtue of signing the 1997 and 2004 ACOs, and having incurred significant costs performing the remedial activities required under the ACOs, the Plaintiffs have conferred, and

{00012748.DOC;2}  14

will, in the future, confer a benefit on the Jones Defendants. The Plaintiffs' actions have substantially increased the value of the JIS Site.

62. Upon information and belief, the value of the Jones Defendants' interest in the JIS Site will continue to increase due to the remedial activities that have been and will be conducted at the JIS Site.

63. The Jones Defendants have or will directly benefit from the value received from Plaintiffs' activities.

64. The Jones Defendants have been and will be unjustly enriched as a result of the remedial activities conducted by the Plaintiffs. It would be inequitable to permit the Jones Defendants to retain the benefit conferred by the actions of Plaintiffs. By virtue of signing the 1997 and 2004 ACOs, and having incurred significant costs performing the remedial activities required under the ACOs, the Plaintiffs will have conferred a benefit on the Jones Defendants, and added substantially to the value of the Jones Defendants' interest in the JIS Site.

65. Upon information and belief, the value of the Jones Defendants' interest in the JIS Site will increase due to the remedial activities that have been and will be conducted at the JIS Site.

66. The Jones Defendants have or will directly benefit from the value received from Plaintiffs' activities.

67. As a result, the Jones Defendants will have been unjustly enriched, causing Plaintiffs to suffer damages. It would be inequitable to permit the Jones Defendants to retain the benefit conferred by the actions of Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs American Standard, Inc., BASF Corporation, Bristol-Myers Squibb Company, Columbian Chemicals Company, General Motors Corporation, Glenn Springs

{00012748.DOC;2}                                    15

Holdings Inc., Shell Oil Company, Smurfit - Stone Container Enterprises, Inc. a successor by merger to Jefferson Smurfit Corporation (U.S.), f/k/a Container Corporation of America, and Textron Inc., demand that judgment be entered against the Defendants J.I.S. Co., J.I.S. Corp., Jones, Swisher f/k/a Helme Tobacco, PPD f/k/a Applied Bioscience International, Richard Roes 1-10 and John Does 1-20 as follows:

1. That Defendants are jointly and severally liable or, in the alternative, are liable for their proportionate shares, for response costs incurred by the Plaintiffs in connection with the Site, plus interest;

2. That a declaratory judgment be entered in favor of Plaintiffs holding the Defendants liable, jointly and severally, or in the alternative, liable for their proportionate shares, for all response costs, including remedial and removal costs, incurred or to be incurred, including natural resource damages, by the Plaintiffs in connection with the Site;

3. Award Plaintiffs' attorneys' fees, costs and disbursements in this action; and

4. Grant such other and further relief, as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a jury trial for all issues so triable.

Respectfully submitted,

THE JIS PERFORMING PARTIES GROUP

By: s/ Irvin M. Freilich
IRVIN M. FREILICH, ESQ.

**ROBERTSON, FREILICH, BRUNO & COHEN LLC**
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
(973) 848-2100

Dated: May 12, 2006